UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MASSACHUSETTS MUTUAL LIFE　　　　　　CIVIL ACTION
INSURANCE COMPANY
　　　　　　　　　　　　　　　　　　　　　　　　　　NO.: 14-85-JWD-RLB
VERSUS

PERMANAND BEEHARILAL

## ORDER

Before the court is a Motion to Compel filed by Defendant and Counterclaim Plaintiff Permanand Beeharilal ("Beeharilal") on January 17, 2015. (R. Doc. 20). Plaintiff and Counterclaim Defendant Massachusetts Mutual Life Insurance Company ("MassMutual") has filed an Opposition. (R. Doc. 25). Beeharilal has filed a Reply. (R. Doc. 39).

**I.    Background**

This dispute concerns whether Beeharilal made a material misrepresentation in his application for disability income insurance provided by MassMutual by not disclosing certain medical issues regarding his left knee. On August 24, 2012, Beeharilal submitted his application, which asked the following questions and to which he provided the following answers:

**Question 53**
Have you ever received treatment or been diagnosed as having or had any of the following? (If "Yes", check condition(s) and give details below.)[1]

**Answer to Question 53**
Yes. Allergy.

---

[1] Question 53 provided a list of twenty-five categories, including Chest Pain, High Blood Pressure, Heart Attack, Stroke, Diabetes, Acquired Immune Deficiency Syndrome (AIDS), Human Immunodeficiency Virus (HIV), Tumor, Cancer, Asthma, Allergy, Pneumonia, Emphysema, Arthritis, Rheumatologic Disorder, Physical Impairment, Seizure, Paralysis, Hepatitis, Venereal Disease, Anxiety, Depression, Psychological/Psychiatric Disorder, Fibromyalgia, and Chronic Fatigue Syndrome (CFIDS).

**Question 54**
Have you ever had any disorder of the following? (If "Yes", check condition(s) and give details below.)[2]

**Answer to Question 54**
No.

**Question 55**
Other than above, within the past 5 years have you had any illness, information, injury or surgery, physical examination, medical consultation, counseling, electrocardiogram, x-ray or laboratory study, or been a patient in a hospital or other medical facility? If "Yes", specify.

**Answer to Question 55**
No.

(R. Doc. 20-2 at 7, 10). Beeharilal did not represent on the application that in January of 2007, he "had slipped on stairs and injured the meniscus in his left knee," which led to "outpatient arthroscopic surgery on June 23, 2007." (R. Doc. 20-1 at 2-3, 6).

MassMutual issued Beeharilal a disability income insurance policy numbered 8751328 ("Policy"). The Policy provides a monthly benefit of $11,000 up to the age of 67, including cost of living increases and other enhancements.

On July 9, 2013, Beeharilal submitted a written claim for benefits in light of an "anterior discectomy decompression with insertion of an artificial disc at C6-7" on June 21, 2013. (R. Doc. 20-1 at 3). This was followed by "two surgeries in 2014 for a herniated disc at L5-S1." (R. Doc. 20-1 at 3). While investigating the claim, MassMutual's claims adjusters discovered Beeharilal's left knee meniscus tear and anthroscopy and consulted the disability insurance chief underwriter, who determined that "[i]f the insured's true circumstances had been known at time of application, [the] policy would not have been issued as it was." (R. Doc. 20-2 at 15). Based on this determination, MassMutual denied Beeharilal's claim on January 28, 2014. (R. Doc. 20-

---

[2] Question 54 provided a list of twenty categories, including Blood, Lymph nodes, Blood Vessels, Skin, Neck, Back, Spine, Bones, Joints, Eyes, Ears, Heart, Lungs, Breasts, Gastrointestinal System, Liver, Kidney, Genitourinary System, Immune System, and Nervous System.

2 at 11-13). In the denial letter, MassMutual asserts that Beeharilal's left knee meniscus tear and arthroscopy should have been disclosed in response to Question 53 (by checking "yes" and "Physical Impairment) and Question 54 (by checking "Bones" and "Joints." (R. Doc. 20-2 at 12-13). MassMutual concluded that the Policy was void and returned Beeharilal's premium payments plus interest. (R. Doc. 20-2 at 13).

On February 7, 2014, MassMutual filed its Complaint initiating this action. (R. Doc. 1). MassMutual seeks rescission of the Policy or a declaration pursuant to 28 U.S.C. § 2201 "that the Policy never came into effect because, at the time it was issued, Beeharilal's health was not represented in the Application." (R. Doc. 1 at 4).

On March 18, 2014, Beeharilal filed an Answer and Counterclaim. (R. Doc. 6). Through his counterclaim, Beeharilal seeks a judgment ordering, among other things, MassMutual to pay disability benefits and other enhancements under the Policy and to pay bad faith damages pursuant to Louisiana Revised Statute 22:1821(A). (R. Doc. 6 at 9-10). In his Answer, Beeharilal states that his knee injury was not responsive to Questions 53 and 54 of the application, which respectively concerned "conditions" and "disorders." (R. Doc. 6 at 5). Beeharilal argues in the instant motion that Question 55 of the Application—which asked whether "within the past 5 years" he had any "injury or surgery"—is the relevant question concerning his left knee meniscus tear and arthroscopy. (R. Doc. 20-1 at 3-4).[3]

On June 25, 2014, Beeharilal propounded the Requests for Production at issue on MassMutual. (R. Doc. 20-4 at 9-16).[4] Requests for Production Nos. 15, 16, 17, and 18, seek

---

[3] The Court takes no position at this time regarding whether Beeharilal's left knee meniscus tear and arthroscopy respectively constitute an "injury" and "surgery" as those terms are used in the Policy.

[4] Beeharilal also propounded Interrogatories on MassMutual on June 25, 2014. (R. Doc. 20-4 at 1-8). In response, MassMutual provided objections and answers on September 4, 2014 (R. Doc. 20-4 at 17-33) and supplemental objections and answers on November 19, 2014 (R. Doc. 20-4 at 44-60). To the extent

3

copies of MassMutual's underwriting and claims guidelines, including identification of the specific guidelines[5] relied upon to deny Beeharilal's claim:

> **Request for Production No. 15:**
> All documents, including but not limited to manuals, protocols, guidelines, training manuals, and other materials, that establish, contain, set forth, comment on, analyze, or discuss the rules, regulations, policies, procedures or other principles used, applied, or relied upon by MassMutual in the underwriting of disability income insurance policies, and/or which are provided by MassMutual to its underwriters to advise or instruct them as to the process of underwriting disability insurance coverage.
>
> **Request for Production No. 16:**
> The specific sections of all documents (including but not limited to manuals, protocols, guidelines, training manuals and other materials, that establish, contain, set forth, comment on, analyze or discuss the rules, regulations, policies, procedures, or other principles used, applied, or relied upon by MassMutual in the underwriting of disability income insurance policies, and/or which are provided by MassMutual to its adjusters to advise or instruct them as to the process of underwriting disability insurance coverage) which you claim would have caused you to decline to issue a policy of disability insurance to [Beeharilal] had he given the responses in the application that you claim he should have provided.
>
> **Request for Production No. 17:**
> All documents, including but not limited to manuals, protocols, guidelines, training manuals and other materials, that establish, contain, set forth, comment on, analyze or discuss the rules, regulations, policies, procedures, or other principles used, applied, or relied upon by MassMutual in administering, adjusting, paying, or denying disability insurance claims, and/or which are provided by MassMutual to its adjusters to advise or instruct them as to the process of administering, adjusting, paying or denying disability insurance claims.
>
> **Request for Production No. 18**:
> The specific sections of all documents (including but not limited to manuals, protocols, guidelines, training manuals and other materials, that establish, contain, set forth, comment on, analyze or discuss the rules, regulations, policies, procedures or other principles used, applied, or relied upon by MassMutual in administering, adjusting, paying, or denying disability insurance claims, and/or

---

Beeharilal is requesting the court to order further responses to these Interrogatories by MassMutual (R. Doc. 20 at 1), the court denies this request as Beeharilal has not identified any interrogatories to which MassMutual has not responded.

[5] The court uses the term "guidelines," as does Beeharilal in his Motion, to refer to the "manuals, protocols, guidelines, training manuals, and other materials" discussed in the actual requests for production at issue.

which are provided by MassMutual to its adjusters to advise or instruct them as to the process of administering, adjusting, paying, or denying disability insurance claims) which you claim caused you to find that [Beeharilal] was not disabled or partially disabled under the terms and conditions of the policy.

(R. Doc. 20-4 at 40-41).

On September 4, 2014, MassMutual stated that it would produce its "applicable underwriting guidelines" in response to the Requests for Production but would first need an agreed protective order in place. (R. Doc. 20-3 at 29). On September 16, 2014, MassMutual provided the following formal objections and responses to the discovery requests:

> **Response to Request for Production No. 15 and 16:**
> MassMutual objects to this request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MassMutual further objects to this request on the grounds that it seeks information which is confidential, private, and proprietary. Subject to and without waiving the foregoing objections, MassMutual will produce a copy of its underwriting guidelines regarding knee injuries.
>
> **Response to Request for Production No. 17 and 18:**
> MassMutual objects to this request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MassMutual further objects to this request on the grounds that it seeks information which is confidential, private, and proprietary. Subject to and without waiving the foregoing objections, MassMutual states that it did not make a decision regarding whether Defendant was partially or totally disabled. Rather, after Defendant made his disability claim, MassMutual determined that Defendant had made material misrepresentations in his application which entitled MassMutual to rescind coverage under the Policy.

(R. Doc. 20-4 at 40-41).

On October 8, 2014, the court entered a Joint Protective Order providing that the parties may designate certain documents as confidential and the parties would be precluded from using properly designated confidential information other than in accordance with the terms and conditions of the Protective Order. (R. Doc. 14).

On November 20, 2014, following a discovery conference between the parties (R. Doc. 20-3 at 23-25), MassMutual provided supplemental objections and answers to Defendant's Requests for Production. (R. Doc. 20-4 at 61-69). In further response to Requests for Production Nos. 15 and 16, MassMutual states that it "has produced a copy of the underwriting guidelines that it relied upon in making its rescission decision at issue in this lawsuit." (R. Doc. 20-4 at 67). Those selected underwriting guidelines pertain to knee injuries and have been filed under seal. (R. Doc. 23-1 at 1-10). MassMutual's original responses to Requests for Production Nos. 17 and 18 were not altered. (R. Doc. 20-4 at 68).

On December 10, 2014, MassMutual produced additional documents. (R. Doc. 20-3 at 7). This supplemental production, which is filed under seal, includes (1) the table of contents to MassMutual's *DI Medical Manual* (R. Doc. 23-1 at 11-37); (2) MassMutual's *DI Claims Claim Evaluation Menu* (R. Doc. 23-1 at 38-39); and (3) MassMutual's *DI Claims Claim Decisions Menu* (R. Doc. 23-1 at 40). MassMutual did not produce the underlying underwriting and claims documents.

On January 16, 2015, Beeharilal received responses to a subpoena for documents propounded on MassMutual Louisiana, a non-party to this litigation. (R. Doc. 20-1 at 19). Beeharilal represents that MassMutual Louisiana is "a Louisiana corporation, which, though it sells MassMutual policies, does not appear to be a subsidiary of MassMutual or to be otherwise part of MassMutual's corporation structure." (R. Doc. 20-1 at 19). In response to a request seeking all guidelines "used, applied, or relied upon by [MassMutual] regarding the underwriting of disability and life insurance policies, and/or [MassMutual's] process of underwriting disability insurance," MassMutual Louisiana produced MassMutual's *Life Underwriting Requirements*

*Guide*, *Income Field Underwriting Guide*, *Disability Underwriting Requirements Guide*, and *Disability Income Insurance Reference Manual*. (R. Doc. 20-5 at 30-31).

On January 17, 2015, Beeharilal filed the instant motion to compel. (R. Doc. 20). Beeharilal seeks an order compelling MassMutual to: "1. Produce the entire *DI Medical Manual* (and not simply the table of contents to the *DI Medical Manual)*, and the rest of its underwriting guidelines as called for in Dr. Beeharilal's Requests for Production; [and] 2. Produce all of its claims guidelines as called for in Dr. Beeharilal's Requests for Production (and not simply tables of contents or screen shots of menus)." (R. Doc. 20-1 at 1). The specific Requests for Production at issue are Nos. 15 and 16 (which seek underwriting guidelines) and Nos. 17 and 18 (which seek claims guidelines).[6]

On February 13, 2015, MassMutual filed its First Amended Complaint. (R. Doc. 27). This amended pleading asserts, among other things, that Beeharilal's alleged "misrepresentation and/or suppression of truth, which Beeharilal made with intent to obtain an unjust advantage" constitutes "fraud under Louisiana Civil Code articles 1953, *et seq*." (R. Doc. 27 at 4).

## II.     Law and Analysis

### A.     Applicable Standards

Rule 26(b)(1) of the Federal Rules of Civil Procedure allows a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." A relevant discovery request seeks information that is "either admissible or reasonably calculated to lead to the discovery of admissible evidence." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1484 (5th Cir. 1990) (quoting Fed. R. Civ. P. 26(b)(1)). Nonetheless, a party may withhold otherwise discoverable information on the basis of privilege. Fed. R. Civ. P. 26(b)(1).

---

[6] Despite MassMutual's assertion otherwise (R. Doc. 24 at 5), Beeharilal specifically references these Requests for Production in his motion. (R. Doc. 20-1 at 8, 18).

In addition, the "district court must limit otherwise permissible discovery if it determines that 'the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues." *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) (quoting Fed. R. Civ. P. 26(b)(2)(C)(iii)).

Rule 34 of the Federal Rules of Civil Procedure provides for the discovery of documents and tangible items. A party seeking discovery must serve a request for production on the party believed to be in possession, custody, or control of the documents or other evidence. Fed. R. Civ. P. 34(a). The request is to be in writing and must set forth, among other things, the desired items with "reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A).

If a party fails to produce documents or permit inspection as required under Rule 34, the party seeking discovery may move to compel disclosure and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

### B. Discovery Requests and Responses at Issue

#### 1. Underwriting Guidelines

Request for Production 16 seeks production of specific sections of all documents that MassMutual claims would have caused a policy of disability insurance to Beeharilal to be denied. There does not appear to be a dispute regarding whether MassMutual produced in response to Request for Production No. 16 "specific sections" of its underlying guidelines which MassMutual claims "would have caused [MassMutual] to decline to issue a policy of disability insurance to [Beeharilal] had he given the responses in the application that [MassMutual] claims

8

he should have provided." MassMutual represents that it relied upon its underwriting guidelines regarding knee injuries in its *DI Medical Manual* and has produced those documents. (R. Doc. 23-1 at 1-10). Because MassMutual has provided the "specific sections" of its underwriting writing guidelines that it claims it would have relied upon to decline to issue the policy in the first place, the court need not compel any additional responses to Request for Production No. 16.

Request for Production No. 15 is not limited to "specific sections" of documents upon which MassMutual relied to underwrite the specific disability insurance policy it issued to Beeharilal. The request more broadly seeks any documents in MassMutual's possession, custody, or control "that establish, contain, set forth, comment on, analyze, or discuss the rules, regulations, policies, procedures or other principles used, applied, or relied upon" by MassMutual to underwrite (or train the underwriting of) its disability insurance policies. As noted by MassMutual, a letter to a potential insured explaining why an application for disability insurance was declined based on MassMutual's underwriting guidelines would be responsive to the request. (R. Doc. 24 at 5-6). The court further agrees with MassMutual that Request for Production No. 15 is not limited in time and could "encompass a time period beginning when the company was first formed." (R. Doc. 24 at 6).

Because Request for Production No. 15 is not limited in scope by subject matter or time, the court concludes that it is overly broad as written. Accordingly, the court will limit the scope of the subject matter that may be obtained through Request for Production No. 15 to documents that establish the procedures for underwriting disability insurance policies, or are otherwise used by MassMutual's underwriters in the process of underwriting of such policies.[7] Similarly,

---

[7] With regard to "training manuals," the court will only allow discovery to the extent such training materials are used by underwriters to underwrite actual policies. Beeharilal has made no specific showing that all materials used for the sole purpose of training underwriters, on any and all topics, are relevant to this action and/or not otherwise contained in the aforementioned guidelines. Training manuals responsive

9

because the temporal scope is unlimited, the court will limit the time range of the request to documents used by, and available to, MassMutual's underwriters from the date Beeharilal submitted his application (August 24, 2012) to the date MassMutual denied his claim (January 28, 2014).

MassMutual also challenges Request for Production No. 15 on grounds of relevance. Beeharilal argues that "[d]emonstrating that MassMutual's interpretation of questions 53, 54 and 55 from Part I of the application . . . was incorrect may involve inquiry into the meaning of terms in the applications, including but not limited to 'impairment,' 'physical impairment,' 'treatment,' 'diagnosed,' 'disorder,' 'illness,' 'infection,' "injury,' and 'surgery.'" (R. Doc. 20-1 at 15). Beeharilal also argues that "[t]he meaning of those terms come in part from their context and from how MassMutual's guidelines treat medical issues other than meniscal injuries." (R. Doc. 20-1 at 15). Beeharilal further argues that "MassMutual put its underwriting regulations at issue when it informed Dr. Beeharilal that it was unilaterally rescinding his policy and then sued him for rescission, claiming that his responses to Questions 53 and 54 were intentional misrepresentations." (R. Doc. 20-1 at 16).

In opposition, MassMutual argues that any underwriting guidelines beyond the specific section of the *DI Medical Manual* concerning knee injuries already provided are not relevant to the parties' claims or defenses. (R. Doc. 24 at 7-8). MassMutual asserts that a review of the table of contents of the *DI Medical Manual* demonstrates that the remaining sections of the document are irrelevant. MassMutual concedes, however, that some of the remainder of the musculoskeletal section of the *DI Medical Manual* may be relevant (including sections on "knee injuries" and "degenerative disorders of the knees") and "agree[s] to produce the current version

---

to Request for Production 16 should have already been provided, and if not, must be provided in the supplemental production required by this Order.

of the entire musculoskeletal section of its underwriting guidelines" to Beeharilal. (R. Doc. 24 at 7-8).[8] MassMutual also represents that it has searched for definitions of "disorder" or "impairment" in its underwriting guidelines and confirms that no underwriting guidelines contain such definitions. (R. Doc. 24 at 8).

Considering the claims and defenses of the parties, the broad scope of terms raised by the insurance application, and the third-party production of MassMutual's underwriting documents, the court finds that the Request for Production No. 15, when limited by time and subject matter as discussed above, is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). A review of the guidelines available to MassMutual's underwriters may lead to the discovery of admissible evidence regarding how those underwriters interpreted terms found in the application and of the underwriting process itself. *See*, *e.g.*, *Sosabee v. Steadfast Insurance Company*, No. 09-4138, 2011 WL 2637324 (E.D. La. July 6, 2011 ) (requiring production of claims-handling guidelines and underwriting manuals/guidelines to determine how the insurer interpreted an exclusion, stating that "such information may lead to the discovery of admissible evidence [and] are routinely sought in insurance-coverage disputes"). That the terms "disorder" and "impairment" are not specifically defined in any underwriting guidelines merely highlights Beeharilal's need to view these and other terms in context within the actual underwriting documents.

Furthermore, the underwriting guidelines sought have particular bearing on MassMutual's allegations that Beeharilal made material misrepresentations and committed fraud in omitting his left knee meniscus tear and arthroscopy. *See AIG Centennial Ins. Co. v. O'Neill*, No. 09-cv-60551, 2010 WL 4116555, at *8 (S.D. Fla. Oct. 18, 2010) (requiring production of

---

[8] MassMutual asserts that other parts of the musculoskeletal section of the *DI Medical Manual* (such as sections on "amputation" and "juvenile rheumatoid arthritis") will not be relevant. (R. Doc. 24 at 8).

underwriting manual because it was "relevant to the materiality aspect of the misrepresentation claim charged by Centennial in its Amended Complaint."); *Lucas v. Protective Life Ins. Co.*, No. 08-cv-00059, 2010 WL 569743, at *3 (W.D. Ky. Feb. 11, 2010) (requiring insurer to produce all life insurance underwriting guidelines and not only those "declared by Defendant to be relevant to its defenses" and finding that the document request was not overly broad as it was limited to the underwriting of life insurance policies); *Weaver v. Lexington Ins. Co.*, No. 805-cv-1913, 2007 WL 570018, at *2 (M.D. Fla. Feb. 20, 2007) (requiring production of "all underwriting guidelines" where plaintiffs "demonstrated that the underwriting guidelines, in part, may contain matters supportive to their claim that there were no material misrepresentations."). The court will not limit Beeharilal "to an examination of only those guidelines" declared by MassMutual to be relevant to its claim for rescission and will allow Beeharilal an opportunity to examine all of MassMutual's underwriting manuals and guidelines related to disability income insurance to determine whether MassMutual's assessment is correct. *See Lucas*, 2010 WL 569743, at *3.

Considering the limitations placed on Request for Production No. 15, the court finds MassMutual's arguments regarding undue burden unconvincing. A third-party has produced some of MassMutual's underwriting documents without objecting based on undue burden. A review of the table of contents for the for the *DI Medical Manual* suggests that the underlying document—and other responsive underwriting guidelines—can be produced without any resulting undue expenses or costs considering the amount at issue in this proceeding. Furthermore, to the extent that MassMutual's argument of undue burden is related to its concerns regarding the production of confidential and proprietary information, the agreed protective order entered by the court addresses those concerns.

Based on the foregoing, the court concludes that MassMutual must produce the entire *DI Medical Manual* and any other documents responsive to Request for Production No. 15 consistent with the limitations detailed above.

### 2. Claims Guidelines

Through Request for Production No. 17 and 18, Beeharilal seeks, respectively, documents used by MassMutual's claims adjusters in the process of adjusting disability insurance claims and his claim in particular. MassMutual responded to both of these requests for production by stating that it did not make a claim decision regarding "whether Defendant was partially or totally disabled" and covered under the Policy, and, instead, "determined that Defendant had made material misrepresentations in his application which entitled MassMutual to rescind coverage under the Policy." (R. Doc. 20-4 at 41).

The court finds this response sufficient for Request for Production No. 18, which asked MassMutual to identify "specific sections" of its claims guidelines that MassMutual claims caused it "to find that [Beeharilal] was not disabled or partially disabled under the terms and conditions of the policy." Through its response, MassMutual represents that it made no such finding and, instead, denied coverage based on its assertion that the policy is void because Beeharilal made material misrepresentations in his answers to Questions 53 and 54 on the Application.

Request for Production No. 17 is not limited to "specific sections" of documents upon which MassMutual relied to adjust and deny the specific disability insurance policy it issued to Beeharilal. The request more broadly seeks any documents in MassMutual's possession, custody, or control "that establish, contain, set forth, comment on, analyze, or discuss the rules, regulations, policies, procedures or other principles used, applied, or relied upon" by

13

MassMutual to adjust (or to train the adjusting of) its disability insurance policies. As noted by MassMutual, a letter to an insured explaining why a claim brought under a disability insurance policy was accepted or denied based on MassMutual's claims adjusting guidelines would be responsive to the request. (R. Doc. 24 at 6). The court further agrees with MassMutual that Request for Production No. 17 is not limited in time and "apparently encompass a time period beginning when the company was first formed." (R. Doc. 24 at 6).

Because Request for Production No. 17 is not limited in scope by subject matter or time, the court concludes that it is overly broad as written. Accordingly, the court will limit the scope of the subject matter that may be obtained through Request for Production No. 17 to documents that establish the procedures for adjusting claims brought under disability insurance policies, or are otherwise used by MassMutual's claims adjusters in while adjusting such claims.[9] Similarly, because the temporal scope is unlimited, the court will limit the time range of the request to documents used by, and available to, MassMutual's claims handlers from the date Beeharilal submitted his claim (July 9, 2013) to the date MassMutual denied his claim (January 28, 2014).

MassMutual also challenges Request for Production No. 17 on grounds of relevance. Beeharilal argues that the claims guidelines are relevant to his counter-claim for declaratory judgment that he is entitled to disability benefits and bad faith penalties and attorneys' fees. (R. Doc. 20-1 at 18; R. Doc. 39 at 4). In response, MassMutual argues that because it "never made a claim decision in this matter," it did not rely on its claims guidelines in denying coverage, and, therefore, such information is not relevant to any claims or defenses. (R. Doc. 24 at 7). MassMutual notes that "[t]o the extent Defendant is arguing that but for the rescissions, he would

---

[9] With regard to "training manuals," the court will only allow discovery to the extent such training materials provide procedures by MassMutual regarding the process by which claims adjusters may determine that claims should be denied or whether coverage is appropriate. Beeharilal has made no specific showing that all materials used for the sole purpose of training claims adjusters, on any and all topics, are relevant to this action.

14

be entitled to disability benefits, the decision is governed by the express language and terms of the Policy at issue." (R. Doc. 24 at 7 n.7). MassMutual does not, however, provide any argument regarding whether and when extrinsic evidence of the parties' intent regarding the meaning of language in the policy may be admissible.

MassMutual has produced an inter-office memorandum dated December 13, 2013, from Heath Verrill, a Disability Insurance Claims Handler, to Kathy Coughlin, the Disability Insurance Chief Underwriter, stating the following:

> [I]t has come to MassMutual's attention that it appears that the application . . . contains a misrepresentation(s) or omission(s) regarding a *left knee medial meniscus tear and left knee arthroscopy with debridement on 6/25/2007*. . . . If the insured's true circumstances had been known at the time of application, would this policy have been issued as it was? Please Circle Yes or NO.
>
> If the policy would NOT have been issued as it was, please explain why and the information that was used to reach your conclusion."

(R. Doc. 20-2 at 14). Ms. Coughlin responded circled "No" and responded that the conclusion was reached based upon the June 21, 2007 diagnosis of Beeharilal's medical meniscal tear, the June 23, 2007 arthroscopy of the left knee with debridement of anterior impinging scar, and the June 28, 2007 initial post operation visit. (R. Doc. 20-2 at 15). A two-page memorandum from attorney Barabara S. Carra to Mr. Verrill, which was produced to Beeharilal fully redacted, appears to be attached to this communication. (R. Doc. 20-2 at 16-17).[10]

Considering the foregoing communication between MassMutual's claims department and underwriting department, as well as the claims and defenses of the parties (including Beeharilal's counterclaims for coverage and bad faith), the court agrees with Beeharilal that MassMutual's

---

[10] In its privilege log, MassMutual claims that this document is attorney-client privileged and protected pursuant to the work product doctrine. (R. Doc. 20-5 at 1). Although Beeharilal claims that "MassMutual has attempted to cloak the full reasoning behind its decision to rescind the policy behind attorney-client and work product privileges" (R. Doc. 20-1 at 6 n.5), he does not contest MassMutual's assertion of privilege in this context.

15

claims documents, as limited above, are discoverable and responsive to its Requests for Production No. 17. *See*, *e.g.*, *Sosabee*, 2011 WL 2637324. MassMutual has produced its *DI Claims Claim Evaluation Menu* and *DI Claims Claim Decisions Menu*, which are essentially tables of contents for the underlying documents. The actual claims guidelines are relevant to determining MassMutual's procedures regarding when and to what extent MassMutual's claims handlers gather information to provide underwriting for the purpose of determining whether misrepresentations were made during the underwriting of the policy. They may also lead to admissible evidence regarding any procedures put in place by MassMutual regarding the process by which claims adjusters may determine that claims should be denied or whether coverage is appropriate. In short, these documents are relevant to Plaintiff's coverage and bad faith claims.

In light of the foregoing limitations placed on Request for Production No. 17, the court finds MassMutual's arguments regarding undue burden unconvincing. A review of the *DI Claims Claim Evaluation Menu* and *DI Claims Claim Decisions Menu* suggests that the underlying documents—and other responsive claims handling guidelines—can be produced without any resulting undue expenses or costs considering the amount at issue in this proceeding. Furthermore, to the extent that MassMutual's argument of undue burden is related to its concerns regarding the production of confidential and proprietary information, the agreed protective order entered by the court addresses those concerns.

MassMutual has made no showing that the scope of documents to be produced in response to Request for Production No. 17, as limited above, would result in undue burden. Production of MassMutual's actual *DI Claims Claim Evaluation* materials, *DI Claims Claim Decisions* materials, and other similar documents will not result in significant expenditures of time or costs. To the extent that MassMutual's argument of undue burden is related to its

concerns regarding the production of confidential and proprietary information, the agreed protective order entered by the court addresses those concerns.

Based on the foregoing, the court concludes that MassMutual must produce its *DI Claims Claim Evaluation* materials, its *DI Claims Claim Decisions* materials, and any other documents responsive to Request for Production No. 17 consistent with the limitations detailed above.

### C. Expenses and Sanctions

Finally, Beeharilal requests the court to award discovery expenses pursuant to Rule 37(a) and sanctions under Rule 26(g). (R. Doc. 20-1 at 20-21).

Under Rule 37(a)(5)(C), if a motion to compel discovery is granted in part and denied in part, a court may apportion the reasonable expenses for the motion. Because the Motion to Compel has been granted in part and denied in part, the court has determined that the parties shall each bear their own costs in connection with the Motion.

Under Rule 26(g)(1)(A)(ii), an attorney signing a discovery response certifies that "to the best of the person's knowledge, information, and belief formed after a reasonable inquiry "discovery responses or objections are "not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." The court has reviewed the relevant discovery responses at issue, as well as the parties' briefs and accompanying correspondence between the parties, and finds that MassMutual objected to the relevant discovery requests in good faith and not for any improper purpose. Accordingly, the court will not issue any sanctions pursuant to Rule 26(g)(3) for improper certification of the discovery responses.

**III. Conclusion**

**IT IS ORDERED** that the Motion to Compel (R. Doc. 20) is **GRANTED IN PART AND DENIED IN PART** in accordance with this Order.

**IT IS FURTHER ORDERED** that MassMutual shall produce responsive documents to Requests for Production Nos. 15 and 17, as outlined in this Order, no later than **April 7, 2015.**

Signed in Baton Rouge, Louisiana, on March 24, 2015.

**RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE**